# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK  10017.6702

TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

Direct Number:  (212) 326-3604
jtambe@JonesDay.com

December 23, 2013

VIA ECF AND E-MAIL

The Honorable Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 640
New York, NY 10007

    Re:    *Lehman Brothers Special Financing Inc. v. Federal Home Loan Bank of Cincinnati*, Case No. 13-cv-04121 (RJS)

Dear Judge Sullivan:

    We represent Lehman Brothers Special Financing Inc. and write regarding developments relevant to the motion by Federal Home Loan Bank of Cincinnati to withdraw the reference, pending before the Court.

    First, we enclose a press release from the United States Bankruptcy Court for the Southern District of New York, dated December 16, 2013, announcing that the Honorable James M. Peck will retire effective January 31, 2014.  (Exhibit A).

    Second, on December 17, 2013, Judge Lorna G. Schofield granted a motion to withdraw the reference brought by the Federal Housing Finance Agency against Lehman Brothers Holding Inc. because, pursuant to the mandatory withdrawal standard, the court would ultimately have to interpret federal non-bankruptcy law.  However, while acknowledging Judge Peck's impending retirement, Judge Schofield nevertheless referred the case back to the Bankruptcy Court for a Report and Recommendation.  *See In re Lehman Bros. Holding Inc.*, No. 13 Civ. 07481(LGS), 2013 WL 6633431, at *3 (S.D.N.Y. Dec. 17, 2013) (Exhibit B).

    Third, on December 19, 2013, in *Lehman Brothers Holdings Inc. v. Intel Corporation*, Judge Peck held that a breach of contract claim brought by Lehman stemming from Intel's unreasonable calculation of its losses upon early termination of a swap agreement was non-core. Adv. Pro. No. 13-01340 (JMP), --- B.R. ----, 2013 WL 6671557 (Bankr. S.D.N.Y. Dec. 19, 2013) (Exhibit C).  Judge Peck observed, "**Regardless of whether a particular count is core or non-core, it is most efficient and eminently sensible for all disputes involving swap agreements where Lehman and its affiliates are counterparties to be handled in this**

ALKHOBAR • AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID
MEXICO CITY • MIAMI • MILAN • MOSCOW • MUNICH • NEW YORK • PARIS • PITTSBURGH • RIYADH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

The Honorable Richard J. Sullivan
December 23, 2013
Page 2

**Court**." *Id*. at *6.  Judge Peck went on to ask Intel in "the interest of orderly case management" to "agree to an adjudication of [the] adversary proceeding in the Lehman bankruptcy court."

For these reasons and the ones set out in our memorandum of law in opposition to the motion to withdraw (ECF No. 12), we remain of the view that it would be more efficient for the Bankruptcy Court to hear this case alongside all other derivatives disputes being heard by that court.  We understand that one judge will take over the entire Lehman docket following Judge Peck's retirement.  *See* Exhibit A.

Should the Court seek further discussion of these developments from the parties, we are prepared to submit a letter brief.

                                        Respectfully,

                                        */s/  Jayant W. Tambe*

                                        Jayant W. Tambe

Enclosures

cc:     Counsel for the Federal Home Loan Bank of Cincinnati (by e-mail)

# EXHIBIT A



**United States Bankruptcy Court**
*Southern District of New York*

Cecelia G. Morris
*Chief Judge*

Vito Genna
*Clerk of Court*

**FOR IMMEDIATE RELEASE**
December 16, 2013

**CONTACT:**
Clerk of Court, 212-668-2892

**TWO DISTINGUISHED BANKRUPTCY JUDGES RETIRE FROM SOUTHERN DISTRICT BENCH**

The United States Bankruptcy Court for the Southern District of New York announces that two of its judges will retire from the bench in 2014. The Honorable James M. Peck will retire effective January 31, 2014, and the Honorable Allan L. Gropper will retire on October 3, 2014. Both judicial vacancies will be filled.

Judge Peck has been on the Southern District bench since 2006 and presided over the Lehman Brothers bankruptcy, which will be assigned to Judge Shelley Chapman by January 31, 2014. In addition to his judicial case load, Judge Peck was the plan mediator in several mega cases including Residential Capitol. Prior to becoming a judge, he was a partner at the law firm Schulte Roth & Zabel LLP, where he specialized in representing debtor entities, secured creditors, creditors' committees, and directors of both public and private companies

Judge Gropper was appointed to the federal bench in 2000, during which time he has presided over many high profile bankruptcy such as Kodak Corporation. Judge Gropper has written the seminal article on arbitration of cross-border international business insolvencies. Judge Gropper was a partner in the law firm of White & Case, specializing initially in general litigation and later in international insolvency matters. He was a Fulbright Tutor in English at Christ Church College in Kanpur, India.

"I have been honored to have served on the Southern District bench with such capable, committed jurists," said Chief Bankruptcy Judge Cecelia G. Morris. "They will be missed. Their influence will continue through their well-reasoned written opinions."

# # #

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK
ALEXANDER HAMILTON CUSTOM HOUSE
ONE BOWLING GREEN, NEW YORK, NY 10004
(212) 668-2870 | HTTP://NYSB.USCOURTS.GOV

# EXHIBIT B

Slip Copy, 2013 WL 6633431 (S.D.N.Y.)
**(Cite as: 2013 WL 6633431 (S.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re LEHMAN BROTHERS HOLDING INC., et al., Debtors.

No. 13 Civ. 07481(LGS).
Dec. 17, 2013.

*OPINION AND ORDER*
LORNA G. **SCHOFIELD**, District Judge.

***1** The Federal Housing Finance Agency ("FHFA") brings this Motion to Withdraw the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d). The FHFA seeks to withdraw the reference for Lehman Brothers Holding Inc.'s ("LBHI") Motion to Classify the FHFA's claim. For the reasons stated below, the reference is withdrawn as a mandatory withdrawal under § 157(d), but the Motion to Classify is referred to the Bankruptcy Court for a Report and Recommendation.

**I. Background**

Between January and August 2008, Freddie Mac, a government sponsored entity, made loans to LBHI totaling between $1 billion and $1.2 billion. On September 15, 2008, LBHI and certain of its subsidiaries commenced Chapter 11 bankruptcy proceedings.

On July 30, 2008, in response to the collapse of the housing market in the United States, Congress enacted the Housing and Economy Recovery Act ("HERA"), which created the FHFA as an independent agency of the Federal Government. Housing and Economic Recovery Act of 2008, Pub.L. No. 110–289, 122 Stat. 2654 (2008). The FHFA was created in part to rehabilitate and supervise Freddie Mac, which was experiencing severe financial difficulties. H.R.Rep. No. 109–171, pt. 1, at 81 (2005). On September 6, 2008, pursuant to the authority granted it under HERA, the FHFA placed Freddie Mac under conservatorship. The FHFA, as Conservator of Freddie Mac, was given the necessary powers to "preserve and conserve the assets and property" of Freddie Mac. 12 U.S.C. § 4617(b)(2)(D)(ii).

On September 22, 2009, the FHFA filed a Proof of Claim in the LBHI Bankruptcy, claiming entitlement to $1.2 billion for its loans, plus accrued interest. Additionally, the FHFA asserted, pursuant to 12 U.S.C. § 4617(b)(15)(A), that it is entitled to avoid any transfer made with the intent to hinder, delay or defraud Freddie Mac, and that its power to avoid these transfers is "superior to any rights of a trustee or any other party (other than any party which is a Federal agency) under Title 11." *Id.* at ¶ 3.

In advance of the confirmation of LBHI's Third Amended Plan of Reorganization (the "Plan"), the FHFA raised objections to the Plan because it failed to create a class establishing the priority of, or define any class to include, FHFA's $1.2 billion HERA claim. The parties negotiated a stipulation (the "Plan Stipulation"), in which LBHI agreed to amend the definition of "Priority Non–Tax Claim" in the Plan to include a claim entitled to priority recovery under HERA, but reserved all rights to later challenge the classification of the FHFA's claim under the Plan. The Plan Stipulation provided for a cash reserve of $1.2 billion in the event that the entire amount of the FHFA claim was determined to be fully payable as a priority claim under HERA. *Id.* On December 6, 2011 the Plan was confirmed.

On September 13, 2013, LBHI filed its Motion to Classify the FHFA's claim under the Plan as a senior unsecured claim, rather than as a Priority Non–Tax Claim. The FHFA filed its Opposition in the Bankruptcy Court to LBHI's Motion to Classify, and now moves to withdraw the reference to the Bankruptcy Court of the Motion to Classify.

**II. Legal Standard**

***2** Withdrawal of the reference to the Bank-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

ruptcy Court is mandatory where the District Court determines that "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). "The test for mandatory withdrawal under § 157(d) has been narrowly defined," as the statute could be read to remove a large number of cases clearly within the purview of the bankruptcy courts. *In re Chateaugay Corp.,* 86 B.R. 33, 36 (S.D.N.Y.1987); *see also In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 995 (2d Cir.1990). In order to find that a proceeding requires consideration of other laws of the United States, "substantial and material consideration of non-Bankruptcy Code federal statutes" must be a necessary part of the resolution of the proceeding. *In re Ionosphere Clubs, Inc.,* 922 F.2d at 995.

A court must need to "engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *City of New York v. Exxon Corp.,* 932 F.2d 1020, 1026 (2d Cir.1991). Mandatory withdrawal "should be exercised only for 'issues requiring significant interpretation of federal laws that Congress would have intended to have decided by a district judge rather [than] a bankruptcy judge.' " *In re Chateaugay Corp.,* 86 B.R. 33, 37 (S.D.N.Y.1987) (citing *In re Johns–Manville Corp.,* 63 B.R. 600, 602 (S.D.N.Y.1987)).

### III. Discussion

Deciding the Motion to Classify will require substantial and material consideration of non-bankruptcy federal statutes, and not simply application of settled law to the facts of this case. HERA § 4617(b)(15) grants the conservator superior rights in avoidance actions related to a "government sponsored entity," such as Freddie Mac, over any other party's avoidance rights under Title 11. Whether or not HERA affects the priority scheme of 11 U.S.C. § 507 requires substantial interpretation of bankruptcy and non-bankruptcy law and is not a matter of established precedent.[FN1] While there is little guidance from the Second Circuit on when an issue is sufficiently substantial and novel to warrant mandatory withdrawal of the reference, when considering the effect of FIRREA—the statute governing the operation of the Federal Deposit Insurance Corporation, on which HERA was modeled—the Second Circuit noted in dictum that the district court likely should have withdrawn the motion under the mandatory withdrawal provision of 28 U.S.C. § 157(d). *In re Colonial Realty Co.,* 980 F.2d 125, 128 n. 5 (2d Cir.1992) ("Although the issue is moot at this juncture, it would appear that the FDIC's motion should have been granted, pursuant to § 157(d), in view of the FDIC's timely motion and the asserted conflict between provisions of the Bankruptcy Code and other federal statutes."). Likewise, whether the grant of superior avoidance rights under HERA affects the priority scheme of a bankruptcy is an issue of non-bankruptcy federal law that requires significant interpretation. *See Exxon Corp.,* 932 F.2d at 1026 (mandatory withdrawal required where a bankruptcy judge must "engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes").

> FN1. The Court has found no case interpreting the relationship of HERA and 11 U.S.C. § 507.

**\*3** The Trustee argues that, because claim priority is always decided with reference to 11 U.S.C. § 507, the Motion to Classify can be decided solely with reference to the Bankruptcy Code and that, consequently, the Bankruptcy Court should keep the Motion. This argument is unavailing because it begs the question. The Motion to Classify will be decided based on the priority scheme in the Bankruptcy Code only if the Court assumes that HERA has no effect. HERA may have no effect on claim priority, but interpretation of HERA is necessary to answer that question. Accordingly, the reference must be withdrawn under § 157(d).

Nevertheless, the Court agrees with Judge Peck, the presiding bankruptcy judge in this matter,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 6633431 (S.D.N.Y.)
**(Cite as: 2013 WL 6633431 (S.D.N.Y.))**

that the issue of claim priority is squarely among the issues bankruptcy courts were created to handle, and that avoidance claims are almost exclusively adjudicated by bankruptcy judges. (*See* Transcript of October 24, 2013 Hearing, Dkt. No. 13–2 at pp. 44–45) ("[W]e are dealing with claim priority questions, and in the case of the HERA statute itself, we're dealing with priorities associated with avoidance powers. In that sense, the non-bankruptcy federal law in question is very closely analogous to bankruptcy law."). Given the complex nature of the claims procedure in the LBHI bankruptcy, the familiarity of Judge Peck with the case, and the expertise of bankruptcy judges generally with avoidance actions and challenges to priority, the Motion to Classify is referred to Judge Peck for a Report and Recommendation.[FN2] The interpretation of HERA is substantial and material to deciding the Motion to Classify, requiring withdrawal, but an understanding of the context is also important. Referring for a Report and Recommendation will provide that context.

> FN2. The Court understands that Judge Peck is leaving the bench on January 31, 2014, but is hopeful to get his invaluable input before he leaves his post.

**IV. Conclusion**

The Motion to Classify is Withdrawn, and referred to Judge Peck for a Report and Recommendation. The Clerk of Court is directed to close the motion at Dkt. No. 1.

SO ORDERED.

S.D.N.Y.,2013.
In re Lehman Bros. Holding Inc.
Slip Copy, 2013 WL 6633431 (S.D.N.Y.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT C

--- B.R. ----, 2013 WL 6671557 (Bkrtcy.S.D.N.Y.)
**(Cite as: 2013 WL 6671557 (Bkrtcy.S.D.N.Y.))**

Only the Westlaw citation is currently available.

United States Bankruptcy Court, S.D. New York.
In re Lehman Brothers Holdings Inc., et al., Debtors.
Lehman Brothers Holdings Inc. and Lehman Brothers OTC Derivatives Inc., Plaintiffs,
v.
Intel Corporation, Defendant.

Case No. 08–13555 (JMP) (Jointly Administered)
Adv. Proc. No. 13-01340 (JMP)
December 19, 2013

Williams & Connolly, LLP, Attorneys for Intel Corporation, 725 Twelfth Street, N.W., Washington, D.C. 20005, John Buckley, Esq.

Wilmer Cutler Pickering Hale & Dorr LLP, Attorneys for Intel Corporation, 1875 Pennsylvania Avenue, NW, Washington, D.C. 20006, Craig Goldblatt, Esq., Daniella Spinelli, Esq.

Jones Day, Attorneys for Lehman Brothers Holdings Inc. and Lehman Brothers OTC Derivatives Inc., 222 East 41st Street, New York, New York 10017, Robert W. Gaffey, Esq., Mahesh V. Parlikad, Esq.

Chapter 11
**MEMORANDUM DECISION GRANTING MOTION TO DISMISS AND DETERMINING THAT CONTRACT CLAIM IS NON–CORE**
JAMES M. PECK, United States Bankruptcy Judge
*Introduction*

*1 Defendant Intel Corporation ("Intel") seeks dismissal of two counts of the adversary complaint filed by Lehman Brothers OTC Derivatives Inc. ("LOTC") and Lehman Brothers Holdings Inc. ("LBHI," and, together with LOTC, "Lehman") and a determination that the sole remaining count for breach of contract is a non-core count that may not be finally adjudicated by the bankruptcy court under the authority of *Stern v. Marshall,* 131 S.Ct. 2594 (2011). The complaint seeks damages from Intel in relation to the early termination and unwinding of a swap agreement dated August 29, 2008 that was structured to enable Intel to acquire by indirect means a significant quantity of its own publicly-traded securities before the end of the third quarter of 2008. In effect, LOTC undertook by contract to execute purchases of securities for Intel's account that Intel, as an entity in possession of vast quantities of material nonpublic information, could not have obtained directly without exposing itself to potential claims under the securities laws. LBHI's only obligations under the swap agreement were as credit support provider.

To complicate matters, this complex transaction to enable Intel to acquire its own shares was arranged only a few weeks before the bankruptcy of LBHI. Under the agreement, LOTC was to purchase Intel shares during the period from September 2, 2008 through September 26, 2008 (the "Calculation Period") for eventual delivery to Intel on September 29, 2008 (the "Settlement Date"). The complaint alleges that approximately 50.5 million Intel shares were supposed to have been delivered on the Settlement Date in accordance with an agreed formula of volume-weighted average prices ("VWAP") of the shares to be acquired during the Calculation Period. Without mentioning any of the well-known market disruptions and volatility that occurred in the aftermath of LBHI's bankruptcy, the complaint goes on to allege that, as of the Settlement Date, LOTC had purchased approximately 39.7 million shares at a cost of approximately $803 million but that the value on that date had fallen to approximately $686 million.

The architecture of the agreement provided for the transfer of $1 billion from Intel to LOTC in exchange for the contemporaneous transfer of $1 billion from LOTC to Intel. The funds transferred to LOTC served as a prepayment of the cash

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

needed to clear periodic purchases of the Intel shares during the Calculation Period. The reciprocal transfer of $1 billion from LOTC to Intel constituted a posting of collateral by LOTC, and, under the Credit Support Annex, Intel had the right to set off from this collateral amounts owed by LOTC in accordance with the swap agreement. Thus, the $1 billion in cash collateral was property of LOTC that functioned as security to protect Intel against the risk of default by LOTC.

LOTC alleges that it purchased Intel shares during the Calculation Period as contemplated by the swap agreement, but no purchased shares were delivered on the Settlement Date as a consequence of the bankruptcy filing by LBHI as Credit Support Provider on September 15, 2008 and the resulting financial upheaval within the enterprises managed by LBHI. Two weeks later, on the Settlement Date, Intel sent a letter to LOTC referring to the bankruptcy of LBHI as an Event of Default and designating September 29, 2008 as the Early Termination Date of the agreement. The following day, Intel exercised its remedies as secured party and set off against the entire $1 billion in collateral of LOTC plus accrued interest. That setoff was a prepetition act that occurred on September 30, 2008, just three days before commencement of LOTC's own chapter 11 case. Issues surrounding the proper characterization of this setoff frame the procedural contest now before the Court.

**\*2** LOTC alleges that in setting off the collateral, Intel failed to make a reasonable, good faith determination of its loss under the swap agreement and wrongfully seized all of the collateral in its possession, thereby exercising control over debtor property in violation of the automatic stay and exposing itself to a cause of action for turnover. The amounts claimed allegedly exceed amounts that LOTC would have owed to Intel under provisions of the agreement that govern the calculation of loss due to LOTC's own default. LOTC asserts that this loss, if determined based on the market value of the undelivered shares, would be $873 million, not the $1 billion plus interest taken by Intel.

From the point of view of the plaintiffs, this adversary proceeding involves an alleged improper seizure of collateral by Intel of amounts greater than what Intel could have recovered under the terms of the agreement. The amount in dispute is not less than $127 million, although as much as $312 million may be claimed by LOTC under an alternative damage calculation based on future open market purchases of Intel shares when prices were depressed even further. From the perspective of Intel, it acted reasonably in accordance with the agreement, has no liability whatsoever and properly exercised prepetition setoff rights that converted the collateral to Intel cash.

The motion practice before the Court raises the question of whether LOTC and LBHI have remedies under the Bankruptcy Code or simply have claims for breach of contract that do not arise within their bankruptcy cases. This question, while sophisticated, is actually one of very limited substantive importance because plaintiffs will retain a cause of action for breach of contract against a financially strong defendant regardless of how the Court decides Intel's motion to dismiss. When viewed in this practical light, the parties conspicuously are jockeying over the pleadings as a means to obtain what each side no doubt perceives to be an advantage in forum selection.

If LOTC prevails, it is foreseeable that the bankruptcy court will retain control over all counts of a complaint that was drafted with obvious attention to including causes of action grounded in provisions of the Bankruptcy Code. That drafting was intentional and designed to invoke the jurisdiction of this Court. However, if Intel is successful in obtaining dismissal of Count II and Count III (seeking turnover and asserting a stay violation, respectively) and a related ruling that Count I is non-core, the defendant will then have the option to move for withdrawal of the reference, thereby possibly enabling it to press contractual

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

defenses in the district court. The tactical aspects, thus, are undeniable and transparent to any experienced observer.

That having been noted, the above procedural backdrop does not affect the merits of this decision, although it does diminish the real importance of what is at stake here. Regardless of the outcome of Intel's motion, LOTC and LBHI will have their opportunity to challenge the propriety of Intel's loss calculation, and Intel will have the ability to defend itself and claim that it acted strictly in accordance with the requirements of the contract governing the VWAP purchases of its shares.

As described in this decision, the Court grants Intel's motion to dismiss. Even after accepting the truth of all allegations of the complaint, LOTC is unable to maintain claims for a stay violation or for turnover. The undisputed prepetition setoff by Intel conclusively forecloses all property interests of LOTC in the collateral. LOTC may have a claim against Intel for taking more collateral than was proper, but that claim is simply a claim for breach of contract. That claim for damages due to the alleged failure to set off in accordance with the loss provisions of the contract arose before commencement of the LOTC chapter 11 case, does not arise within the bankruptcy cases of either LOTC or LBHI and is non-core.

### Discussion
*Rule 12(b)(6) Standard*

**\*3** Federal Rule of Bankruptcy Procedure 7012(b), which incorporates Federal Rule of Civil Procedure 12(b)(6) (" Rule 12(b)(6) "), permits a bankruptcy court to dismiss an adversary proceeding if a plaintiff's complaint fails to state a claim upon which relief may be granted. In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts the factual allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007); *E.E. O.C. v. Staten Island Sav. Bank,* 207 F.3d 144, 148 (2d Cir.2000). To survive a challenge to the adequacy of a complaint under Rule 12(b)(6), the factual allegations in a complaint must be supported by more than mere conclusory statements. *Twombly,* 550 U.S. at 555. The allegations must be sufficient "to raise a right to relief above the speculative level," and provide more than a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted).

A court may dismiss a complaint unless a plaintiff pleads "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 556 U.S. at 679 (citing *Twombly,* 550 U.S. at 556). Therefore, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether [he] is entitled to offer evidence to support [his] claims." *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (citation omitted).

*Turnover (Count II) and Declaratory Judgment – Stay Violation (Count III)*

Counts II (for turnover) and III (for a declaratory judgment that Intel, by its actions, violated the automatic stay) are based on the assertion that when Intel, on September 30, 2008,[FN1] "set-off and applied the Posted Collateral held by [it] ... consisting of Cash, in the amount of U.S. $1,001,966,256.00 ... against the amount of U.S. $1,001,966,256.00 payable by [LOTC] under the [agreement]," it was not entitled to do so. Compl. ¶ 41; Compl. Ex. 7. Lehman alleges that Intel's "actual Loss" was less than the amount of the setoff. Compl. ¶ 47.

> FN1. The Court recalls its characterization of the commencement of the chapter 11 cases of LBHI and its affiliates as a "singular event" in *Lehman Bros. Special Fin. Inc. v. BNY Corporate Tr. Servs. (In re Lehman Bros. Holdings Inc.),* 422 B.R. 407 (Bankr.S.D.N.Y.2010) ("BNY Trustee"). That characterization was relevant for purposes of interpreting the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

*ipso facto* language at issue in that proceeding, but is of no consequence here. See BNY Trustee, 422 B.R. at 420. In the complaint, Lehman has acknowledged the separateness of the LBHI and LOTC petitions and points out that the setoff occurred prior to the filing date of LOTC's own petition. Compl. ¶¶ 12, 41. Notably, Lehman has not alleged that the setoff occurred post-petition, nor could it under the facts presented.

Lehman asserts a right to turnover under § 542(a) of the Bankruptcy Code of this disputed portion of the collateral, claiming that Intel is "in possession, custody, or control of property that the trustee may use, sell, or lease" under § 363 of the Bankruptcy Code "because the definition of estate property includes all legal and equitable interests of a debtor in property as of the commencement of the case." Compl. ¶ 61. In Count III, Lehman claims that Intel's ongoing refusal to return the disputed portion of the collateral amounts to an "exercise of control" over property of the estate, in violation the automatic stay imposed by § 362(a)(3) of the Bankruptcy Code. However, these two counts of the complaint are based on the flawed premise that Lehman retains the right to assert a property interest in the collateral after a prepetition setoff.

**\*4** Applicable case law clearly provides that where "a creditor sets off a prepetition debt against a prepetition obligation prior to the bankruptcy case having been commenced, such setoff ... effectuate[s] a transfer that prevents the subject property from becoming property of the estate...." *In re Quade,* 482 B.R. 217, 229 (Bankr.N.D.Ill.2012) (citations omitted). Prepetition foreclosures, as a general matter, operate to transfer ownership to the foreclosing party. The Second Circuit, in *Rodgers v. County of Monroe (In re Rodgers),* 333 F.3d 64 (2d Cir.2003), held that a debtor's mere possession of title to a foreclosed property did not make it property of the estate. *Id.* at 69. The court noted that a prepetition foreclosure sale of the property at issue "effectively cut off [the debtor's] legal title" in the property. *Id.* The debtor's right of redemption had expired, and so the property was not subject to the automatic stay. *Id.*

*Weber v. SEFCU (In re Weber),* 719 F.3d 72 (2d Cir.2013) is a recent decision of the Second Circuit that deals with a stay violation in relation to a repossessed motor vehicle. Lehman places considerable reliance on this decision in claiming a continuing property interest in the collateral, but *Weber* is distinguishable. In *Weber*, although the vehicle in question was in the possession of the debtor's lender, the debtor still retained the "right ... to redeem the vehicle before sale." *Weber,* 719 F.3d at 77 (citing N.Y. U.C.C. § 9–623). Therefore, retention of the vehicle by the lender was a violation of the automatic stay. *Id.* at 83.

Exercising control over the vehicle violated the stay because the debtor's right to redemption was a property interest that was entitled to bankruptcy protection. *See Weber,* 719 F.3d at 77. No such right exists here. Cash collateral is not like a piece of tangible property. Once taken by a secured party and applied to satisfy a prepetition obligation, both the obligation and the cash collateral lose their separate character and are extinguished. The inescapable problem for Lehman in asserting bankruptcy claims based on Intel's ongoing possession of debtor property is that the asserted property interest no longer exists and has evaporated. Setoff by Intel has transformed the once-segregated cash collateral account into fungible cash that is now indistinguishable from the other cash held by Intel in its coffers.[FN2]

> FN2. Similarly, in a different Lehman-related adversary proceeding, the Court recently determined that a failure of a secured party to return collateral that had been transferred to Barclays Capital gives rise to no more than a breach of contract claim. *See FirstBank Puerto Rico v. Barclays Capital, Inc.,* 492 B.R. 191,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

200–201 (Bankr.S.D.N.Y.2013). The court referred to the explanation by the Supreme Court in *Hennequin v. Clews,* 111 U.S. 676 (1884), that a creditor who holds collateral is bound by its contract "to return it when its purpose as security is fulfilled; but if [it] fails to do so, it is only a breach of contract ... [.]" *FirstBank,* 492 B.R. at 200 (quoting *Hennequin,* 111 U.S. at 682). This conclusion would not apply if the setoff by Intel had not occurred prepetition and if an identified fund of cash collateral still existed. Under that hypothetical alternative, the holding in *Weber* would support a finding of a stay violation by Intel and perhaps a count for turnover. The situation presented by Lehman in this adversary proceeding also is distinct from the one that the Court confronted in *Bank of America, N.A. v. Lehman Bros. Holdings, Inc. (In re Lehman Bros. Holdings, Inc.),* 439 B.R. 811 (Bankr.S.D.N.Y.2010). There, a setoff occurred in alleged reliance upon one of the safe harbor provisions of the Bankruptcy Code, but, in fact, that post-petition setoff of debtor property violated the automatic stay.

**\*5** Here, the agreement expressly provides that Intel may, following an Early Termination Date, set off the collateral against its losses, thereby eliminating "any claim or right of any nature whatsoever of [LOTC]" in the Posted Collateral, "including any equity or right of redemption." Compl. Ex 4 ¶ 8(a)(iii)-(iv). Assuming the truth of the allegations in the complaint that Intel has exceeded its authority and has not acted reasonably in calculating its loss on account of declaring an Event of Default, Lehman is left with a breach of contract claim, not a right of redemption or a right to reclaim a fund of segregated property held by Intel. The disputed portion of the collateral is not property of the estate. Intel has not violated the automatic stay and holds no property to turn over to Lehman.

Accordingly, for the reasons stated, Counts II and III of the complaint fail to state a claim upon which relief may be granted and are dismissed.

*Analysis of Core v. Non–Core Issues*

Under 28 U.S.C. § 1334, district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a), Standing Order M–431 refers all such cases to this Court. *See* Amended Standing Order of Reference, dated January 31, 2012 (Preska, C.J.). Typically, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as "core" proceedings, while proceedings "related to" a case under title 11 are referred to as "non-core" proceedings. *See Stern,* 131 S.Ct. at 2605; *Bank of America, N.A. v. Lightstone Holdings, LLC (In re Extended Stay, Inc.),* 418 B.R. 49, 55 (Bankr.S.D.N.Y.2009), *aff'd,* 435 B.R. 139 (S.D.N.Y.2010) (citations omitted).

"Bankruptcy core jurisdiction extends to all civil proceedings arising under title 11 or arising in a case under title 1 1." *Joremi Enters. v. Herskowitz (In re New 118th LLC),* 396 B.R. 885, 890 (Bankr.S.D.N.Y.2008) (citing 28 U.S.C. § 157(b)(1)) (additional citations omitted). A core proceeding, as a general matter, is one that invokes a substantive right under the Bankruptcy Code or that could arise only in the context of a bankruptcy case. *See New 118th,* 396 B.R. at 890 (citing *Binder,* 372 F.3d at 162–63) (additional citation omitted).

"A proceeding is related to a case under title 11, and falls within its non-core jurisdiction, if the outcome might have a conceivable effect on the estate." *New 118th,* 396 B.R. at 890 (citing *Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 114 (2d Cir.1992)) (additional citations and internal quotation marks omitted). The breach of contract

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

count discussed below unquestionably is related to the Lehman chapter 11 cases.

*Breach of Contract (Count I)*

Intel classifies the breach of contract count of the complaint as a "paradigmatic non-core matter," one that arises under New York law and could have been brought outside the context of the Lehman bankruptcy. Reply Supp. Mot. Dismiss 3–4. Lehman disagrees, maintaining that Count I is core because it "is inextricably tied to the bankruptcy context" and "arose only as a result of the Lehman bankruptcy," relying on the "arising in" hook to core jurisdiction. Br. Opp'n 19.

However, as this Court previously has held, a claim "arises in" a case under the Bankruptcy Code only if the claim "would have no existence outside of the bankruptcy." *Extended Stay,* 418 B.R. at 58 (quoting *Rednel Tower, Ltd. v. Riverside Nursing Home (In re Riverside Nursing Home),* 144 B.R. 951, 955 (Bankr.S.D.N.Y.1992) and citing *Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.),* 505 F.3d 237, 260 (3d Cir.2007)). These are the sort of "claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." *Seven Fields Dev. Corp.,* 505 F.3d at 260.

**\*6** Without a doubt, the LBHI bankruptcy case was the event of default cited by Intel when it declared an early termination of the agreement, but the consequences of that default—allegedly unreasonable loss calculations in accordance with a contract for purchasing shares under a VWAP formula leading to a demand for payment of excess amounts taken by Intel—have no direct connection to the bankruptcy of either LBHI or LOTC other than as a possible claim to augment the estates with cash now held by Intel.

Given the foregoing, and based upon the very same reasoning stated in *Extended Stay,* Count I of the complaint is non-core. *See generally, Extended Stay,* 418 B.R. 49. The thrust of Count I is that Intel breached the agreement by unreasonably computing its loss and seizing more cash than it deserved. Regardless of the merits of that proposition, the claim against Intel to recover contractual damages for the cash wrongfully taken does not arise in any bankruptcy case. The commencement of the LBHI case was the triggering event for early termination but is not a relevant factor for determining whether claims are core or non-core. This is unmistakably clear where all material liability-creating conduct actually took place a number of days before the bankruptcy filing of LOTC. Plainly, a cause of action based on a prepetition breach of contract is not one that can arise *only* in a bankruptcy case or that can only be pursued in a bankruptcy court.

Notwithstanding the determination that Count I is non-core, the Court has a concern about the "gaming" of bankruptcy jurisdiction that is evident both in the allegations of the complaint and in Intel's motion to dismiss. Regardless of whether a particular count is core or non-core, it is most efficient and eminently sensible for all disputes involving swap agreements where Lehman and its affiliates are counterparties to be handled in this Court. *See, e.g., In re: Lehman Brothers Holding[s] Inc.,* No. 13 Civ. 0748(LGS) (S.D.N.Y. Dec. 17, 2013) (granting motion to withdraw the reference, but referring proceeding to this Court for a Report and Recommendation in light of this Court's familiarity with the issues). In the interest of orderly case management, the Court proposes that Intel agree to an adjudication of this adversary proceeding in the Lehman bankruptcy court.

*Conclusion*

For the reasons stated, the Counts II and III of the complaint are dismissed, and Count I is non-core. Intel shall submit a proposed order consistent with this Memorandum Decision.

SO ORDERED.

Bkrtcy.S.D.N.Y., 2013
In re Lehman Brothers Holdings Inc.
--- B.R. ----, 2013 WL 6671557 (Bkrtcy.S.D.N.Y.)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.


--- B.R. ----, 2013 WL 6671557 (Bkrtcy.S.D.N.Y.)
**(Cite as: 2013 WL 6671557 (Bkrtcy.S.D.N.Y.))**

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.